[No. 18203. Department Two. January 24, 1924.]

O. E. THOMPSON, *Trustee, Respondent,* v. GEORGE M. MITCHELL, *Appellant,* ANNA L. KUNZE, *Administratrix etc., et al., Cross-Appellants,* WISCONSIN TIMBER COMPANY *et al., Respondents.*[1]

CORPORATIONS (126, 128)—OFFICERS—DEALINGS WITH CORPORATION —PERSONAL PROFIT. De facto officers of a corporation, who adjusted a claim against the company at $68,000 and secretly bought the claim for $25,000, are guilty of a violation of their duties and are entitled to recover only the sum paid and interest, on the claim against the company.

SAME (165)—OFFICERS—DEALINGS WITH CORPORATION—SALES OF PROPERTY—RATIFICATION. Stockholders of a corporation giving consent to the delivery of bonds securing a claim, in order that the claim may be sold, do not ratify a sale to "undisclosed principals" where they did not know that the purchasers were de facto officers of the corporation taking a secret profit for their own benefit in violation of their duty as such officers.

[1]Reported in 222 Pac. 617.

APPEAL (218)—NOTICE—PARTIES TO BE SERVED. It is not ground for the dismissal of an appeal that notice was not served upon a co-defendant who secured a judgment as to a small portion of the property involved which was not appealed from or questioned.

SAME (379)—REVIEW—INTERLOCUTORY ORDERS—ON APPEAL FROM FINAL JUDGMENT. On appeal from the final judgment, error cannot be assigned on the appointment of a general receiver, in the absence of a timely appeal from the order.

CORPORATIONS (131)—ACTION BETWEEN TRUSTEE AND CORPORATION —EVIDENCE—ADMISSIBILITY. An inquiry as to the manner in which a de facto trustee in a corporation secured his stock is foreign to the issues in an action to foreclose corporate bonds, in which the trustee alleged a claim against the corporation.

TRIAL (2)—CONSOLIDATION OF CASES—DISCRETION. It is discretionary to refuse to order a consolidation of cases for trial.

CORPORATIONS (224)—INSOLVENCY—POWERS OF TRUSTEE FOR CREDITORS. The good faith of a trustee of first mortgage corporate bonds, in claiming a default, cannot be asserted where he had a duty to perform to creditors.

MORTGAGES (243)—FORECLOSURE—ATTORNEY'S FEES. An attorney's fee of $1,000 in an action to foreclose first mortgage corporate bonds of $34,000, and a second mortgage of $25,000 is reasonable, where the same attorneys appeared for both plaintiffs, there being no conflict in their interests.

RECEIVERS (56)—SALES—POWERS OF COURT. In an action to foreclose first mortgage corporate bonds and a second mortgage, it is not an abuse of discretion to order a receiver's sale.

Cross-appeals from a judgment of the superior court for Snohomish county, Alston, J., entered January 22, 1923, upon findings in favor of the plaintiff and cross-complainant, in an action on bonds and to foreclose a mortgage, tried to the court. Affirmed.

*Clay Allen,* for appellants Kunze *et al.*

*Cooley, Horan & Mulvihill,* for appellant Mitchell.

*W. P. Bell,* for respondents Wisconsin Timber Company *et al.*

*Williams & Davis,* for respondent Bank of Stanwood.

MITCHELL, J.—At the time of the commencement of this action, the Wisconsin Timber Company, a corporation (hereinafter called the timber company), owning a sawmill at Stanwood, Washington, had outstanding first mortgage bonds in the sum of $34,000. In the year 1917, subsequent to the issue of the first mortgage bonds, the timber company entered into an agreement with the Sloan Shipyards Corporation (hereinafter called the Sloan Corporation) by which the Sloan Corporation would advance $100,000 to the timber company for a given length of time, to be secured by a bond issue and a mortgage on its property, $100,000 of which bonds should be placed with a bank in Seattle to protect the loan. It was further agreed that the timber company should furnish lumber to the Sloan Corporation. The mortgage was given, the bonds issued and delivered to the depositary, and $100,000 was advanced to the timber company, which thereafter made payments by the delivery of manufactured lumber. During this time George W. Kunze was a stockholder and the president and active manager of the affairs of the timber company. He died on December 28, 1921, and his widow, Mrs. Anna L. Kunze, was appointed and qualified as the administratrix of his estate. Dissensions arose at once between her, Carstens & Earles, Ben R. Kunze and John W. Maloney concerning the management of the affairs of the timber company and the ownership of its one thousand shares of capital stock. Mrs. Kunze and Carstens & Earles claimed that the estate of George W. Kunze, Carstens & Earles and Ben R. Kunze each owned one-third of the stock, while Ben R. Kunze and John W. Maloney claimed that Mrs. Kunze owned two hundred and seventy-seven shares, Carstens & Earles twenty-seven shares, Maloney two hundred shares, and Ben R. Kunze four hundred and seventy-six shares.

At the annual stockholders' meeting, March 10, 1922, Ben R. Kunze and John W. Maloney, voting the stock they claimed to own, elected themselves trustees and elected Ben R. Kunze president and John W. Maloney secretary of the timber company. This meeting was not attended by Mrs. Kunze or Carstens & Earles, who at all times have refused to recognize the legality of the meeting or the election of officers. Ben R. Kunze and John W. Maloney thereafter continued in possession and control of the property and affairs of the timber company. In the meantime the Emergency Fleet Corporation took over the affairs and property of the Sloan Corporation and it became necessary that the Sloan Corporation and the timber company adjust the account between them, over which there was considerable dispute. For that purpose a conference was held in Seattle about February 15, 1922, of which it appears that Mrs. Anna L. Kunze had no notice, there being present Ben R. Kunze and John W. Maloney, with the attorneys for the timber company, and the president and attorney of Carstens & Earles; no one representing the Sloan Corporation. It was agreed at the conference that the indebtedness due to the Sloan Corporation by the timber company was $68,000, which upon report to the Sloan Corporation was accepted by it through its attorney. It appears that the adjustment of the account was desirable in the settlement of affairs between the Sloan Corporation and the Emergency Fleet Corporation. The latter part of April, 1922, the $68,000 claim against the timber company was sold and $100,000 of the second mortgage bonds, obtained at that time from the bank, were delivered to the person to whom the claim was assigned. That claim and those bonds are represented by George M. Mitchell, a party to this action.

After the sale of the claim of $68,000, O. E. Thompson, as trustee, commenced this suit to recover on $34,-000 first mortgage bonds, then due and payable, and to foreclose the mortgage given to secure them. George M. Mitchell was made a defendant upon the allegation that he claimed some inferior right to or lien on the property. George M. Mitchell appeared and by answer admitted the superiority of the lien held by the plaintiff and made a cross-complaint against the timber company, setting up the claim of $68,000 assigned to him and the delivery to him of $100,000 of the second mortgage bonds, and asking judgment in the amount of his claim and for the foreclosure of the second mortgage in satisfaction of his judgment. Anna L. Kunze, as administratrix and in her own right, and also as representing the timber company, intervened, asserting that $17,000 of the first mortgage bonds belonged to her individually, and she further alleged, in substance, that the suits by Thompson and Mitchell were by reason of a fraudulent combination on their part and others to secure the property of the timber company. The affirmative matter of these answers was denied.

Before the trial a receiver was appointed, and later, there appearing to be some question as to his powers, an order was entered making the receiver a general one. The receiver thereafter appeared by pleading in the action, the effect of which is unimportant in our view of the case at this time. The trial resulted in findings and judgment giving O. E. Thompson, as trustee, judgment and first lien on the property in the amount represented by the $34,000 first mortgage bonds, and in favor of George M. Mitchell in the sum of only $25,000 and a second lien on the property, with an attorney's fee of $1,000. George M. Mitchell has

appealed, and so has Mrs. Anna L. Kunze, in the several capacities in which she appeared in the action.

The First National Bank of Stanwood was made a party defendant by the original complaint. The bank appeared and asserted a mortgage on a small amount of property of the timber company, which was ordered foreclosed free from any lien on behalf of Thompson or Mitchell, neither of whom raises any question with reference thereto on this appeal.

Concerning the appeal of George M. Mitchell, it should be stated that he appears only in a nominal way, that is, as assignee for collection of the $68,000 claim, Ben Kunze and others being the beneficial parties therein. On his behalf it is contended that the judgment in his favor should have been for the full amount of the claim. The view of the trial court was that Ben Kunze and John Maloney bought the claim under circumstances that prohibited any recovery against the timber company in excess of the amount they paid. Some further facts should be noticed. Upon the death of George W. Kunze, Maloney, who formerly worked for the timber company, but who had not done so for some considerable time, went back to its place of business and with Ben R. Kunze took charge of all its affairs. From that time on there was open hostility between them on one side against the other stockholders. Choosing themselves as sole trustees and as president and secretary at the meeting on March 10 they well knew was not recognized by other stockholders, because of the claim that a majority of the stock was not represented at that meeting. However, it must be taken that they thereby became, and that they knew they were, officers *de facto* of the timber company. It was they who as such officers had the power under the law to decide, and who did decide,

to admit an indebtedness of the timber company in the sum of $68,000 in favor of the Sloan Corporation.

Very shortly after the admission of indebtedness, Ben R. Kunze and John W. Maloney commenced negotiations through a representative to purchase the claim against the corporation whose affairs they alone were handling. Those negotiations continued until the latter part of April, when the claim was purchased by the same representative for only $25,000, the money being furnished by Ben R. Kunze and John W. Maloney, other than a small amount by another person. In taking the assignment of the claim, the name of their then attorney was used as assignee, and he in turn executed and delivered a reassignment in blank and delivered it, together with the bonds, to the representative of Ben R. Kunze and John W. Maloney, who in turn, some weeks thereafter, filled in the name of George M. Mitchell as assignee and delivered it with the bonds for suit about the time suit was commenced by O. E. Thompson, trustee.

Still other important facts must be noticed. The trial court found that the assets of the timber company, as shown by its books, exceeded its liabilities (not including its capital stock) and that the book value of its stock was over par; that there was not sufficient money on hand to meet its first mortgage bonds nor to purchase the Sloan Corporation claim, and "that no attempt was made by Ben Kunze and John Maloney, its *de facto* managing agents and officers, to raise money with which to take care of said indebtedness of said company." In this respect the evidence shows that, at the date of the death of George W. Kunze, and when Ben R. Kunze and John W. Maloney took charge of affairs, there was on hand manufactured lumber, $49,-496.66; Liberty Bonds and stamps, $9,953.87; bills receivable, $8,400.07; and cash in bank, $1,949.45. There

was no pretense at operating the plant or attempting to convert any of the assets so as to meet the first mortgage bonds that did not fall due until March 15, 1922, all the property being insured at that time and no one pressing any claim or threatening to sue.

Much less than that close scrutiny suggested and enjoined by all authority will detect in the line of conduct of these two trustees and officers a purpose and plan to proceed contrary to the settled rule that trustees and officers of a corporation are bound to the exercise of the utmost good faith, to the end of conserving its property and furthering its interest.    To the extent it was necessary, they kept under cover to avoid the exposure that would be necessary in appearing as plaintiffs in a suit against a corporation that only they were the trustees of, in the collection of a claim that they, as such trustees, had adjusted against the corporation in the matter of a disputed account.    Such conduct is wholly at variance with the principles of equity and was manifestly designed to create a large personal profit, to the injury of the corporation they alone were qualified to represent.

At the sale of the claim it became necessary, in order to procure the bonds from the depositary, to have the consent of all the stockholders of the timber company that the bonds be delivered, and because Anna L. Kunze, by her attorney, and Carstens & Earles gave their consent it is now claimed that they must be held to have ratified the sale.    Ratification is a matter of intention.    It involves a knowledge of the facts to which it relates, and there is no proof in the record that those now charged with ratification knew to whom the sale was being made.    It was specifically stated at that time by those who did know that the purchase was not being made for the timber company, but for "undisclosed principals."    It is quite true, as stated

by counsel, that at the time it was charged by the attorneys for Mrs. Kunze and Carstens & Earles that the purchase was being made for Ben R. Kunze and John W. Maloney, neither of whom was present, but even that accusation, based upon suspicion only, did not successfully appeal to the frankness of those representing the real purchasers. Indeed, the record shows that they were never disclosed or uncovered as the real purchasers until at the trial of this case counsel for the appellant, who were not connected with the matter until suit was brought, frankly stated upon inquiry who the real parties in interest were.

In our opinion, the trial court quite properly refused a recovery for any amount in excess of $25,000 and interest. Nor are we disposed to disturb the allowance of $1,000 attorney's fees, on appellant's contention that it is insufficient.

On the cross-appeal of Anna L. Kunze, the first point made is a motion to dismiss the appeal of George M. Mitchell on the ground that his notice of appeal was not served on the First National Bank of Stanwood. We have already considered that appeal on its merits because the present motion to dismiss it should be denied. As already stated, the bank received a favorable judgment with reference to a small portion of property, and it appears that the appeal of George M. Mitchell does not include that portion of the judgment, and therefore the bank has no interest whatever in that appeal. *Sipes v. Puget Sound Electric R. Co.,* 50 Wash. 585, 97 Pac. 723.

It is assigned as error that the court erred in appointing a receiver and in subsequently enlarging his powers to that of a general receiver. This assignment cannot be considered on the merits because the orders were not appealed from within the time provided by statute.

Nor do we think there was error in refusing to allow a proposed inquiry into the manner in which Maloney acquired his stock. It was foreign to this case and triable only in an appropriate action brought for that purpose. He was a *de facto* officer in the transactions involved in this suit.

It is assigned that error was committed in refusing to consolidate the cases of Brokaw v. Anna L. Kunze et al., and Bank of Stanwood v. Anna L. Kunze et al., pending before the same court, with the present case for trial, as those cases involved a portion of the bonds mentioned in the complaint herein of O. E. Thompson, trustee. The matter of consolidation of cases for trial is in the discretion of the court, while the controversy over a portion of the bonds has been decided adversely to the contention of the cross-appellant, *Brokaw v. Kunze,* 127 Wash. 593, 221 Pac. 590.

The challenge to the good faith of Thompson, trustee, in claiming a default on the bonds involved in this suit was properly denied by the trial court. The trustee had a duty to perform in behalf of the interests of the creditors. His course was directed by the terms of the bonds, together with the failure of the timber company to meet those terms.

It is assigned that there was error in the allowance of attorney's fees in favor of O. E. Thompson, trustee, and George M. Mitchell. The mortgages involved in the complaints of those parties specifically provide for reasonable attorney's fees in case of suit and the amounts allowed appear to be reasonable. The same attorneys appearing for both parties, there being no conflict in their respective interests, the one holding first and the other second mortgage bonds, was evidently taken into consideration by the trial court in fixing the amount of attorney's fees to be allowed in each case.

The sale of the property by the receiver under the order of the court was within the power and discretion of the court, and under the circumstances of the timber company at the time the sale was ordered, we can see no abuse in discretion in making the order, nor any valid objections to the confirmation of the sale. Other assignments, of minor importance, have been disposed of by what has already been said.

The judgment appealed from is in all respects affirmed.

MAIN, C. J., FULLERTON, and BRIDGES, JJ., concur.